UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SETH M. D.,[1]

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

**DECISION AND ORDER**

1:21-cv-01116 (JJM)

---

       This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance ("DIB") or supplemental security income ("SSI") benefits.  Before the court are the parties' cross-motions for judgment on the pleadings [8, 9].[2]  The parties have consented to my jurisdiction [11].  Having reviewed the parties' submissions [8, 9, 10], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

       The parties' familiarity with the 595-page administrative record [7] is presumed. In October of 2019, plaintiff filed applications for DIB and SSI, alleging disability beginning December 31, 2018 due to asthma, anxiety, autism, and ADHD (attention deficit hyperactivity

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

disorder).  Administrative Record [7] at 15, 248.  After the applications were denied, an

administrative hearing was conducted before Administrative Law Judge ("ALJ") Asad M. Ba-

Yunus on December 21, 2020, at which plaintiff, who appeared with an attorney, and vocational

expert Yaakov Taitz testified. Id. at 33-56 (transcript of hearing).

Mr. Taitz testified that an individual with plaintiff's residual functional capacity

("RFC") could perform the unskilled jobs of hand-packager, price marker, and document

preparer.  Id. at 54.  In addition, he testified that an employee being off-task 20% of the time

within a workday would preclude all work, as would "two to three unexcused absences per

month".  Id. at 54.

Based upon the medical evidence and testimony, ALJ Ba-Yunus found that

plaintiff's severe impairments were "asthma, obesity, anxiety disorder, autism spectrum disorder,

depressive disorder, [and] [ADHD]".  Id. at 18.  He considered the four broad categories of

"Paragraph B" mental functioning and determined that plaintiff had a mild limitation in the

category of understanding, remembering, or applying information.  He concluded that plaintiff

had moderate limitations in the categories of: interacting with others; concentrating, persisting,

and maintaining pace; and adapting and managing oneself.  Id. at 19. Plaintiff challenges the

ALJ's finding concerning adapting and managing oneself.  Plaintiff's Memorandum of Law [8-1]

at 21, 25.

In order to determine plaintiff's RFC, ALJ Ba-Yunus considered functional

assessments from four sources: consultative examiner Adam Brownfeld, Ph.D.; state agency

medical consultants H. Tzetzo, M.D. and S. Juriga, Ph.D.;[3] and treating clinical counselor

Rosemarie McGowan, MSW and Psychiatric Nurse Practitioner Peter Coggiola.  In addition, ALJ

---

[3]         Dr. Tzetzo's and Dr. Juriga's first names do not appear in the record.

Ba-Yunus considered evidence in an Adaptive Behavior Assessment authored by NYS Licensed Psychologists Robert J. Valenti, Ph.D. and a Diagnostic Assessment Report authored by NYS Licensed Psychologist Caroline I. Magyar, Ph.D.

On January 8, 2020, Dr. Brownfeld conducted a psychiatric evaluation, including a mental status examination.  Id. at 380-383.  He also considered plaintiff's functional abilities, opining that plaintiff had:

> 1) no evidence of limitations understanding, remembering, and applying simple and complex directions and instructions; using reason and judgment to make work-related decisions; sustaining concentration and performing a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; maintaining personal hygiene and appropriate attire; and being aware of normal hazards and taking appropriate precautions; and
>
> 2) moderate limitations interacting adequately with supervisors, coworkers, and the public; and regulating emotions, controlling behavior, and maintaining well-being.

Id. at 382.  In addition, he concluded that plaintiff's "cognitive problems" did "not appear to be significant enough to interfere with his ability to function on a daily basis".  Id.

After reviewing the evidence in the file up to the date of his review, January 24, 2020, Dr. Tzetzo opined that plaintiff had:

> 1) mild limitations in understanding, remembering, or applying information;
>
> 2) moderate limitations interacting with others;
>
> 3) moderate limitations in his ability to concentrate, persist, and maintain pace; and
>
> 4) moderate limitations in adapting and or managing himself.

Administrative Record [7] at 61.  Dr. Juriga reviewed the file evidence at the reconsideration level and considered several additional medical exhibits, including records from Person Centered

Services and Clarity Wellness Group.  Id. at 84-85.  On May 1, 2020, after review of additional medical evidence, Dr. Juriga opined the same functional limitations as Dr. Tzetzo.  Id. at 84-85, 88.

Ms. McGowan and NP Coggiola jointly completed a Medical Source Opinion on December 15, 2020.  Id. at 593-95.  They checked boxes indicating that plaintiff was "unlimited" or retained "limited but satisfactory" ability in each category of functional abilities necessary to perform unskilled work, except for the ability to "respond appropriately to changes in a routine work setting", in which they opined plaintiff to be "seriously limited, but not precluded".  Id. at 594.  Among the "limited but satisfactory" abilities they opined plaintiff could perform on a "day-to-day basis in a regular work setting" in the context of unskilled work were the following skills:

- maintain attention for two hour segments;

- maintain regular attendance and being punctual within customary, usually strict tolerances;

- sustain an ordinary routine without special supervision;

- perform at a consistent pace without an unreasonable number and length of rest periods;

- accept instructions and respond appropriately to criticism from supervisors;

- get along with co-workers without unduly distracting them or exhibiting behavioral extremes; and

- deal with normal work stress.

Id. at 594.  In the broad "Paragraph B" categories of mental functioning, Ms. McGowan and NP Coggiola indicated the plaintiff had moderate limitations in his functional ability to: understand, remember or apply information; interact with others; and concentrate, persist or maintain pace. Id. at 595.  They stated that he had marked limitations in his ability to adapt or manage himself.

Id.  Finally, they indicated plaintiff's "impairments or treatment" would cause him to be absent from work "about two days per month".  Id.

Dr. Magyar administered diagnostic tests to plaintiff and issued a Diagnostic Assessment Report of her findings and recommendations on April 10, 2019.  She concluded that the "[r]esults of the current assessment indicate [plaintiff] has a history and current clinical presentation consistent with autism spectrum disorder, associated with generalized anxiety".  Id. at 355.  Although she did not complete a functional assessment of plaintiff's work-related abilities, she made several recommendations for plaintiff's care, including:

- psychotherapy and psychiatric services to determine if medications were appropriate;

- evaluation by an occupational therapist to determine if he also had a developmental coordination disorder;

- formal vocational training and assistance;

- assessment by, and treatment from, a Licensed Board Certified Behavior Analyst; and

- application to, and exploration of services offered by, the Office for Persons with Developmental Disabilities and the Livingston-Wyoming ARC.

Id. at 355-56.

Following his evaluation with Dr. Magyar, plaintiff completed an adaptive behavior assessment with Dr. Valenti through the ARC of Livingston-Wyoming.  Id. at 328-31. Dr. Valenti concluded, *inter alia*, that "[t]he results of the current adaptive behavior assessment indicate that [plaintiff] is functioning *below* the 1st percentile overall with regard to chronological age expectancy . . . .  No *inter*-individual strengths were identified."  Id. at 331 (emphasis in original). Dr. Valenti described plaintiff's adaptive skills upon testing as "remarkably inconsistent

with his intellectual development", which was measured by a Wechsler Intelligence Scale for Children - FSIQ evaluation in 2009, yielding a score of 110.

Based upon the functional opinions, the reports of Drs. Valenti and Magyar, and other evidence in the file, ALJ Ba-Yunus concluded that plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: . . . may only perform unskilled, simple, routine tasks, may have occasional interaction with supervisors, coworkers and the general public, and can tolerate occasional changes to a routine work setting." Id. at 20.  He found both Dr. Tzetzo's and Dr. Juriga's opinions "generally persuasive" as they were "well supported by explanations and citations to the underlying record and are consistent with Dr. Brownfeld's examination and findings".  Id. at 23.  He found Dr. Brownfeld's "moderate limits in interacting with others and adaptation or self management" "well supported by the record and the claimant's reports, and are persuasive".  Id. at 22.

ALJ Bu-Yunus agreed with Ms. McGowan and NP Coggiola that plaintiff was limited in each category of mental functional ability.  However, he disagreed with the degree of those limitations in two of the four categories:

> "The moderate limit in understanding, remembering, and applying information is not supported by any mental status examination and is not adopted.  The marked limit in adaptation or self management is not supported by the claimant's expansive daily activities and assisted but largely independent lifestyle. They noted that the claimant had seriously limited abilities in dealing with detailed or semi-skilled work, which is persuasive and reflected in the limit to simple work in the residual functional capacity.  They further noted that he otherwise had limited but satisfactory skills in the performance of simple work, working in coordination with others, sustaining pace, and dealing with normal work stress and hazards. This comports with the benign underlying mental status examinations, is consistent with the Brownfeld, Tzet[z]o, and Juriga opinions, and is persuasive.  The assessment that he would be absent two days a month is entirely speculative, without support

from any aspect of the record or an explanation in this opinion
form, and is not adopted as persuasive."

Id. at 23.

Based upon the RFC and the vocational expert's testimony, ALJ Ba-Yunus

determined that plaintiff was able to perform jobs that exist in significant numbers in the national

economy, and therefore was not disabled, as defined in the Social Security Act.  Id. at 25.  The

Appeals Council found no basis to change ALJ Ba-Yunus's decision. Id. at 1-4.  Thereafter, this

action ensued.

Plaintiff argues that the RFC is not supported by substantial evidence for five

reasons.  He argues that the ALJ:

1.  mischaracterized the records of Ms. McGowan and NP Coggiola, ignored
    the negative findings recorded therein, and cherry-picked only the positive
    findings in their treatment notes, failed to address the supportability and
    consistency factors with respect to their opinion, and improperly rejected
    their opinion that plaintiff would be absent from work 2 days per month
    (Plaintiff's Memorandum of Law [8-1] at 11-18);

2.  improperly rejected evidence in the reports of Drs. Magyar and Valenti that
    demonstrated plaintiff had a marked limitation, rather than a moderate
    limitation, in adapting or managing oneself (id. at 19-22);

3.  improperly relied upon non-treating sources (Drs. Tzetzo and Juriga),
    should have assigned limited weight to Dr. Brownfeld's opinion, and did
    not discuss the consistency and supportability factors (id. at 22-24);

4.  failed to include in the RFC restrictions to accommodate "moderate"
    limitations in regulating emotions, controlling behavior, and maintaining
    well-being and with concentration, persistence, or maintaining pace (id. at
    25-27); and

5.  mischaracterized of the record to discount plaintiff's subjective complaints
    and failed to acknowledge plaintiff's supportive living services (id. at 27-
    30).

The Commissioner responds that ALJ Ba-Yunus's decision is supported by substantial evidence in the record, and adequately explained.  The Commissioner argues that plaintiff's arguments are more accurately characterized as requests to re-weigh the evidence. Commissioner's Brief [9-1] at 9-29.  The Commissioner further addresses each of plaintiff's arguments to demonstrate that the ALJ properly analyzed the evidence under the appropriate regulations, and included in his decision adequate information from which the court could glean his reasoning.  Id. at 12-28.  Further, the Commissioner points out that plaintiff failed to satisfy his burden to produce evidence that he was more limited than the RFC.  Id. at 13, 20, 24, 26.

For the following reasons, I agree with the Commissioner.

## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. §405(g).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).  "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record".  Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); see also Brault v. Commissioner, 683 F.3d 442, 448 (2d

Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*") (emphasis in original).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole".  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination").  It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record."  Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable").

**B.      The RFC is Supported by Substantial Evidence**

It is the ALJ's responsibility to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". <u>Matta</u>, <u>supra</u>. In doing so, an ALJ may not "arbitrarily substitute [his/her] own judgment for competent medical opinion." <u>Riccobono v. Saul</u>, 796 F. App'x 49, 50 (2d Cir. 2020) (Summary Order). However, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." <u>Schillo v. Kijakazi</u>, 31 F.4th 64, 78 (2d Cir. 2022).

Although ALJ Ba-Yunus's analysis might have been stated with more clarity, his decision, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached". <u>Lopez obo Y.T. v. Commissioner of Social Security</u>, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted).  He neither mischaracterized nor cherry-picked the record to support his conclusions. Therefore, I find that his conclusions concerning plaintiff's RFC are supported by substantial evidence. That is, a "reasonable mind might accept" ALJ Ba-Yunus's reasoning  "as adequate to support his conclusion". <u>Consolidated Edison Co.</u>, 305 U.S. at 229.  The substantial evidence standard means that, "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*".  <u>Brault</u>, 683 F.3d at 448 (emphasis in original).

**1.   The ALJ's Treatment of the Opinion Evidence**

Plaintiff's first and third arguments deal with the ALJ's analysis of the opinion evidence.  I find that the ALJ accurately discussed the record evidence, and properly applied the supportability and consistency factors to the opinions in order to arrive at his conclusions at step 3 and with respect to plaintiff's RFC.

Plaintiff argues that, with respect to the opinion of Ms. McGowan and NP Coggiola, the ALJ "failed to accurately evaluate the records from Clarity Wellness Group (Wyoming County Mental Health Clinic), Person Centered Services, and DePaul Supportive Housing", "mischaracterized, ignored, and/or cherry-picked the findings", and failed to discuss any negative mental status examination findings, the services received through Person Centered Services and DePaul Supporting Housing, and that plaintiff lived in supportive housing. Plaintiff's Memorandum of Law [8-1] at 13.  These criticisms are not borne out by the decision.

Plaintiff argues that ALJ Ba-Yunus "did not discuss any of the mental status examination or the longitudinal treatment notes showing medication changes and periods of regression".  Id. at 16.  Although the ALJ did not discuss the treatment findings of each treatment note, or itemize every potentially "negative" finding, it is apparent from the decision that the ALJ considered the treatment notes, as well as the negative findings.  ALJ Ba-Yunus references the treatment notes from the Clarity Wellness Group.  See Administrative Record [7] at 22, referencing id. at 396-409 (exhibit 10F) and 544-92 (exhibit 20F) (treatment notes from Clarity Wellness Group).  He notes that the mental status examinations in those records "consistently indicated a cooperative attitude, stable mood, normal thought processes and [in]tact, good insight and judgment, and no noted memory or attention impairment".  Id.

Indeed, review of the treatment notes in those exhibits indicate that Ms. McGowan and NP Coggiola consistently made these findings as part of the mental status examinations they conducted during each visit for counseling and medication management, respectively.  See id. at 397-98, 400, 402, 404-05, 407, 544-45, 547-48, 553-54, 556, 558, 560, 562, 564-65, 567, 569, 571, 573-74, 576-77, 580, 582, 585, 588, 590-91.  Rather than ignore findings concerning periodic increases in plaintiff's anxiety, the ALJ specifically acknowledged that, notwithstanding

the "stable and benign" mental status examination findings through December 2020, plaintiff experienced "situational anxiety around the Covid pandemic". Id. at 22. Again, review of the treatment records and his case management records, also cited by the ALJ (id. at 22, referencing id. at 491-542 (exhibit 18F)) indicate that this assessment was accurate. See id. at 519 (4/15/2020 Supportive Housing Coordinator note ("Seth and writer discussed COVID-19 and Seth expressed his fear of NYS going into 'panic mode' due to the virus and the whole stated rioting, etc. which makes Seth very nervous and would like to have the gun he was left from his grandfather")); 554 (4/17/2020 McGowan treatment note ("[r]egression with issues he wished to fulfill with having his shotgun with him at The Perry Knitting Mills Apartments")).

Plaintiff argues that the ALJ "did not discuss the supports provided through Person Centered Services or while residing in supportive living in DePaul Housing". Plaintiff's Memorandum of Law [8-1] at 16. However, the ALJ discussed plaintiff's October 2019 care plan meeting with Person Centered Services (Administrative Record [7] at 22, discussing id. at 360-62 (exhibit 4F)) and findings recorded in his case management records from his supportive housing coordinator (id., discussing id. at 491-542 (exhibit 18F)). Further, in his discussion of the opinion of Ms. McGowan and NP Coggiola, the ALJ stated that he did not adopt their opined "marked" limitation in adaptation or self management because it is "not supported by the claimant's expansive daily activities and assisted but largely independent lifestyle". Id. at 23.

With respect to the supportability and consistency of the opinion evidence, plaintiff argues that the ALJ "did not apply the consistency or supportability factors" to Ms. McGowan and NP Coggiola's opinion (id. at 16-17) and also that he "failed to articulate the consistency and supportability factors" with respect to the opinions of Drs. Brownfeld, Tzetzo, and Juriga (id. at 22). However, the ALJ's decision demonstrates that he considered both factors

with respect to all of the opinions.  For example, while discussing the moderate limits opined by

Dr. Brownfeld in the functional categories of interacting with others and adaptation or self

management, the ALJ identified information in Dr. Brownfeld's report developed from the

plaintiff and the findings of the mental status examination that supported such limitations:

> "[Plaintiff] endorsed sleep disturbances, anxiety, difficulty
> concentrating, fear of change of the unknown, self-consciousness
> about his body, perseverating thoughts, and difficulty picking up on
> social cues.  During the mental status examination, he made
> appropriate eye contact, was cooperative and well groomed, spoke
> fluently, had a euthymic mood and affect, intact attention,
> concentration, and memory, and good insight and judgment".

 Id. at 22.  He concluded that the "moderate limits are well supported by the record and the

claimant's reports, and are persuasive".  Id.  The ALJ's citation to Dr. Brownfeld's report, as well

as his use of the word "supported", indicates that the ALJ considered whether Dr. Brownfeld's

conclusions were supported by his examination of plaintiff.  The ALJ's indication that the

moderate limits were supported "by the record" also indicates that he considered Dr. Brownfeld's

findings and conclusions in the context of the other evidence in the record, which were discussed

in previous paragraphs, notwithstanding the absence of the word "consistency".  Further, in his

discussion of Ms. McGowan's and NP Coggiola's opinion, ALJ Ba-Yunus noted that certain of

their findings concerning the plaintiff's ability to perform simple work "comports with the benign

underlying mental status examination and is consistent with the Brownfeld, Tzet[z]o, and Juriga

opinions, and is persuasive".  Id. at 23.  This analysis reflects the ALJ's consideration and

application of both the supportability and consistency factors for all four functional assessments.

The ALJ's analysis further demonstrates that he compared all the opinions to one another.

Finally, the ALJ's rejection of Ms. McGowan's and NP Coggiola's opinion that

plaintiff would be absent from work "about two days per month" is both explained and supported

by substantial evidence.  ALJ Ba-Yunus rejected that portion of the opinion because it "is entirely speculative, without support from any aspect of the record or an explanation in this opinion form, and is not adopted as persuasive".  Id. at 23.  Under certain circumstances,  such a statement may be considered too conclusory to satisfy the ALJ's obligation to explain his rejection of an opinion concerning absenteeism.  See, e.g. Elizabeth P. v. Commissioner, 2022 WL 507367, *13-14 (N.D.N.Y. 2022) ("[s]tating that a portion of an opinion is 'speculative' without reference to that provider's records or the record as a whole does not explain the supportability or consistency of the opinion such that the Court can glean the ALJ's rational.  Further . . . all five medical opinions opining off-task limitations are work preclusive").

        Here, Ms. McGowan and NP Coggiola do not indicate anywhere in their Medical Source Opinion the basis of their opinion that plaintiff's "impairments or treatment" would cause him to be absent from work "about two days per month", nor do they specify which of these (i.e. the "impairments", the "treatment", or both) would lead to the absences.  See Administrative Record [7] at 595.  However, they do state with respect to unskilled work specifically, that plaintiff had a "limited but satisfactory" ability to "maintain regular attendance and be punctual within customary, usually strict tolerances".  Id. at 594.  Further, nowhere in Ms. McGowan's or NP Coggiola's treatment notes, which the ALJ reviewed and discussed (see id. at 22), does it indicate plaintiff had any difficulty attending scheduled appointments, or being prompt.  Their treatment notes do not indicate plaintiff has any difficulty with attendance at other functions.  See generally, id. at 397-409; 544-592.  Their own treatment notes, therefore, do not support their opinion on absenteeism.

        Moreover, review of other evidence in plaintiff's file does not support the opinion on absenteeism.  For example, records from plaintiff's supportive housing coordinators, which the

ALJ also reviewed (*see* id. at 22) indicate they met by phone or in person with plaintiff on over 30 occasions between November 2019 and November 2020, but that plaintiff missed only two scheduled appointments in December 2019.  *See* id. at 537-38.

Nor does the frequency or length of plaintiff's treatments with Ms. McGowan or NP Coggiola justify their opinion concerning absenteeism.  In her December 10, 2020 treatment note, Ms. McGowan stated plaintiff was to return in three weeks.  Id. at 591.  Her appointments typically lasted approximately 45 minutes to one hour.  *See* id. at 544-92.  In his December 7, 2020 treatment note, NP Coggiola instructed plaintiff to return in three months.  Id. at 589.  His appointments with plaintiff typically lasted 10-20 minutes.  Id. at 544-92.

Under these circumstances, the ALJ's reasons for rejecting the absenteeism limitation is both stated (*i.e.* "without support from any aspect of the record or an explanation in this opinion form" (id. at 23)) and supported by substantial evidence.  *See* Tamara M. v. Commissioner, 2021 WL 1198359, 8 (N.D.N.Y. 2021) ("where treating physicians use check-box assessment forms that do not explain how they reached these limitations and the treatment notes do not support those limitations, the treating physicians' opinions were reasonably accorded less weight").

## 2.  Reports of Drs. Magyar and Valenti

Plaintiff argues that the ALJ erred because he "failed to acknowledge the diagnostic testing and other findings within the opinions of Drs. Magyar and Valenti".  Plaintiff's Memorandum of Law [8-1] at 19.  Specifically, plaintiff argues that "the results of the [Adaptive Behavior Assessment System-3] fell more than 2 standard deviations from the mean" and supports "marked limitations . . . in the area of adapting or managing oneself".  Id. at 21.  The

ALJ acknowledged that Dr. Magyar diagnosed "autism spectrum disorder and generalized anxiety disorder" in her April 2019 evaluation. Administrative Record [7] at 21. He also discussed the results of Dr. Valenti's Adaptive Behavior Assessment:

> "His adaptive skills were noted to be inconsistent with [his] academic achievement and IQ scores, with hypersensitivity to certain sounds and textures, and the performance of home chores only []under duress . . . Nonetheless, the claimant could read and write at a minimum sixth-grade age level, effectively conveyed his needs and wants, was a good historian, could understand all or most abstract and nonabstract verbal statements, performed simple math adequately, interacted politely, and noted that he enjoyed online gaming and fantasy role playing events."

Id. Despite the ALJ's consideration of Dr. Valenti's report, plaintiff argues that the "evidence of marked limitations contradicts the ALJ's step 3 finding of only a moderate limitation in the area of adapting or managing oneself . . . The evidence of marked limitations contradicts the ALJ's rejection of the opinion of NPP Coggiola and Ms. McGowan containing marked limitations". Plaintiff's Memorandum of Law [8-1] at 21. However, even if Dr. Valenti's assessment contains evidence that could support a marked limitation in that functional domain, that evidence conflicts with evidence in Dr. Brownfeld's report, and in the reports of Drs. Tzetzo and Juriga that plaintiff had moderate limitations in that functional area. It was within the ALJ's discretion to resolve that conflict based upon the evidence in the record. Patrick R. v. Commissioner of Social Security, 2022 WL 17247242, *3 (W.D.N.Y. 2022) ("[i]t has been well-recognized that it is the ALJ who is tasked with formulating an RFC based on a review of the entire record, and that it is within the ALJ's discretion to resolve genuine conflicts in the evidence").

Here, the ALJ agreed with Ms. McGowan and NP Coggiola that plaintiff had limitations in the functional area of adapting and managing oneself. However, based upon the evidence he cited in his decision, he determined that limitation was moderate, rather than marked.

*See* Administrative Record [7] at 19, 21-24.  Based on my own review of that evidence, I cannot say that "no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record".  <u>Cheatham</u>, 2018 WL 5809937 at *9.  The ALJ's conclusion concerning plaintiff's degree of limitation in this functional area, therefore, is based upon substantial evidence.

### 3.   Moderate Limitations Reflected in the RFC

Plaintiff argues that ALJ Ba-Yunus either failed to incorporate into the RFC plaintiff's moderate limitations in the functional abilities to regulate emotion, control behavior and maintain wellbeing, and to concentrate, persist, or maintain pace, or to explain how the RFC accommodated those limitations.  Plaintiff's Memorandum of Law at 25-27.

However, it is well settled that up to moderate limitations in some or all areas of mental functioning may be accounted for in an RFC like the one determined by the ALJ here. The ALJ found plaintiff "may only perform unskilled, simple, routine tasks, may have occasional interaction with supervisors, coworkers, and the general public, and can tolerate occasional changes to a routine work setting."  Administrative Record [7] at 20.  A plaintiff's ability to regulate emotions, control behavior, and maintain well-being are "consistent with" an RFC limiting plaintiff to "simple, routine, and repetitive tasks" and "occasionally interacting with supervisors, coworkers, and the public".  <u>Michelle K. v. Commissioner</u>, 527 F.Supp.3d 476, 483 (W.D.N.Y. 2021).  In addition, "[t]he determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance".  <u>Landers v. Colvin</u>, 2016 WL 1211283, *4 (W.D.N.Y. 2016).  Here, the RFC contains largely

identical limitations.  Accordingly, the moderate limitations plaintiff has in these functional areas are adequately accounted for by the RFC.

Further, plaintiff does not indicate how or why the plaintiff would be unable to perform work within the RFC due to the moderate limitations he experiences in these functional areas.  "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).  I agree with the Commissioner that plaintiff failed to do that here.  *See* Commissioner's Brief [9-1] at 27.  Unlike the plaintiffs in the cases cited by plaintiff in support of this argument (*see* Plaintiff's Memorandum of Law [8-1] at 25), the ALJ here did not fail to discuss evidence in the treatment records or functional opinions suggesting that significantly greater restrictions were appropriate. *See* Jimmie E. v. Commissioner, 2021 WL 2493337, *3-4 (W.D.N.Y. 2021) (RFC permitting unskilled work with no contact with the public and only "occasional interaction with coworkers and supervisors" insufficient without explanation to accommodate moderate limitations in regulating emotion, controlling behavior and maintaining well-being where the record included a "history of aggressive, physically injurious behaviors"); Christopher F. v. Commissioner, 2022 WL 130764, *1-3 (W.D.N.Y. 2022) (RFC limitations to "simple, routine and repetitive tasks, but not at a production rate pace" with "only occasional contact with the general public, and frequent interactions with coworkers and supervisors" insufficient to accommodate "moderate to marked limitations in regulating emotions, controlling behavior, and maintaining wellbeing" where ALJ did not acknowledge the opined limitation in his decision or discuss treatment records documenting examples of plaintiff's inappropriate behavior).  Moreover, plaintiff does not identify any evidence in the record that suggests specific additional limitations that should have been added to the RFC in order to accommodate plaintiff's moderate limitations.

After discussing the record in detail, the ALJ summarized the reasons for his RFC

findings:

> "For part of the period at issue, the claimant had a case manager
> who assisted him with appointments and shopping, but the record
> shows that he  was able to cook, clean, take public transit, shop in
> stores, socialize online and in person, and entertain himself through
> hobbies that required sustained concentration and critical thinking
> skills, like playing video games. . . . The opinions of record
> generally agree that he has some limitations in his ability to perform
> work activity, but it is clear from his daily activities and benign
> mental status examinations that he could perform simple work with
> occasional social interaction, and only occasional changes to the
> workplace that would trigger stress".

 Administrative Rcord [7] at 24.  When read as a whole, the decision satisfies the ALJ's

obligation "to construct an accurate and logical bridge between his recitation of the facts and the

conclusions he reached".  Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL

4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted). Although I do not find that the ALJ

failed to include any particular limitations in the RFC to account for the plaintiff's moderate

limitations, to the extent that the ALJ failed to do so, any such error is harmless on this record.

"[T]he jobs identified by the vocation expert in response to the ALJ's hypothetical were all

unskilled positions, able to accommodate **mild or moderate** mental limitations. . . . Accordingly,

the ALJ's failure to include limitations to account for plaintiff's mild mental impairments in his

RFC determination would, even if erroneous, be harmless error".  Kevin D. v. Commissioner,

2023 WL 8436638, *3 (W.D.N.Y. 2023) (emphasis added).


### 4.  Analysis of Plaintiff's Subjective Allegations

Plaintiff's final argument is that the ALJ mischaracterized the record and

improperly used plaintiff's daily activities as evidence he could perform simple work with the

limitations listed in the RFC.  Plaintiff's Memorandum of Law [8-1] at 27-28.  He argues further that ALJ "failed to acknowledge that Plaintiff lived in a supportive living apartment with services provided multiple times per month and on-site staff", requiring remand. Id. at 29-30. After review of the record and the ALJ's decision, I disagree.

As explained above, the ALJ did not mischaracterize the record.  In addition, although the ALJ cited the plaintiff's daily activities as evidence that he could "sustain[] concentration" and had "critical thinking skills", this was not the only evidence that plaintiff could perform work with the RFC.  Administrative Record [7] at 24.  Plaintiff's own treating professionals, Ms. McGowan and NP Coggiola, agreed that plaintiff had "limited but satisfactory" ability to perform most of the many "abilities and aptitudes needed to do unskilled work", including the ability to "maintain attention for two hour segments".  Id. at 594.  In addition to the plaintiff's activities of daily living, the ALJ also considered this opinion evidence.  Id. at 23.

In addition, the ALJ acknowledged that plaintiff lived in a supportive living apartment, and reviewed the records documenting the services provided.  Id. at 22, 23.  Those case management records indicated "that the claimant was keeping his home reasonably clean, working on sleeping at routine hours, feeling less anxious, becoming increasingly independent, making in-person friends in addition to his online friends, and was interested in signing up for college-level art classes".  Id. at 22.  The case management records support this summary.  For example, at the May 5, 2020 telephone meeting with his Supportive Housing Coordinator, plaintiff "expressed how thankful he is to everyone work[ing] with him as he didn't think he would ever be as independent as he is".  Id. at 513.  During a July 22, 2020 call, he stated that he was "spending more time with his friends" and "planning some outdoor activities that will help them get more exercise".  Id. at 506.

Based upon this record, ALJ Ba-Yunus's reliance upon plaintiff's activities of daily living in addition to the medical and other evidence was not error.  Where, as here, an ALJ's findings concerning the plaintiff's own claims about the limiting effects of his or her impairments are supported by references to the record, those findings are supported by substantial evidence. Stanton v. Astrue, 370 Fed. Appx. 231, 234 (2d Cir. 2010).

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [8] is denied.

 **SO ORDERED**.

Dated: March 15, 2024

/s/   Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge